E
X
H
I
B
I
T

A

**EXHIBIT A**

**Northwestern Mutual®**

The Northwestern Mutual Life Insurance Company agrees to pay the benefits provided in this policy, subject to its terms and conditions. Signed at Milwaukee, Wisconsin on the Date of Issue.

**RENEWABLE AFTER AGE 65**
Between ages 65 and 75, this policy may be renewed on each policy anniversary on which the Insured continues to be employed on a full time basis.

**Non-Cancellable and Guaranteed Renewable --**
This disability income policy is guaranteed renewable upon timely payment of premiums to the first policy anniversary after the Insured's 65th birthday and, during that period, can neither be cancelled nor have its terms or premiums changed by the Company.

John E. Schlifske
Chief Executive Officer

Raymond J. Manista
Secretary

**IMPORTANT NOTICE CONCERNING STATEMENTS IN THE APPLICATION FOR YOUR INSURANCE**

**Please read the copy of the application attached in this policy. Carefully check the application and write to THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, 720 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202, within 10 days, if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. The application is a part of the policy and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.**

SUBSTITUTE POLICY

**DISABILITY INCOME POLICY**

**Eligible For Annual Dividends.**

Non-Cancellable and
**Guaranteed Renewable to Age 65 - Rates Not Subject to Change**

**Conditionally Renewable to Age 75 - Rates Subject to Change**

**Right To Return Policy.** Please read this policy carefully. The policy may be returned by the Owner for any reason within ten days after it was received. The policy may be returned to your agent or to the Home Office of the Company at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202. If returned, the policy will be considered void from the beginning and any premium paid will be refunded.

RR.NCDI.(0101).FL

| | | | |
|---|---|---|---|
| **Insured** | David A Burstyn | **Age and Sex** | 28 Male |
| **Policy Date** | March 14, 2004 | **Policy Number** | D1 521 442 |
| **Plan** | Disability Income | | |

Exclusions--See Section 3.

RR.NCDI.(0101)

**This policy is a legal contract between the Owner and The Northwestern Mutual Life Insurance Company.**
**Read your policy carefully.**

# GUIDE TO POLICY PROVISIONS

**BENEFITS AND PREMIUMS**

**SECTION 1. GENERAL TERMS AND DEFINITIONS**

Insured and Owner. Terms on schedule of Benefits and Premiums. Regular occupation. Total disability. Partial disability. Licensed Physician. Regular Care of a Licensed Physician. Consumer Price Index.

**SECTION 2. BENEFITS**

Disabilities covered by the policy. Full Benefit. Proportionate Benefit. How the Proportionate Benefit is determined. Transition Benefit. Transplant donor. Lifetime Benefit for Presumptive Total Disability. Waiver of Premium Benefit. Rehabilitation Benefit. Disability with multiple causes. Benefits for separate disabilities.

**SECTION 3. EXCLUSIONS AND LIMITATIONS**

Pre-existing conditions. Other exclusions. Limitation While the Insured is Outside the United States. Limitation for Mental Disorder and Substance Abuse or Dependency.

**SECTION 4. CONDITIONAL RIGHT TO RENEW TOTAL DISABILITY COVERAGE TO AGE 75**

**SECTION 5. CLAIMS**

Claim for policy benefits. Time of payment of claims. Payment of claims. Legal actions.

**SECTION 6. OWNERSHIP**

Policy rights. Transfer of ownership. Collateral assignment.

**SECTION 7. PREMIUMS AND REINSTATEMENT**

Premiums. Reinstatement.

**SECTION 8. THE CONTRACT**

Entire contract; changes. Time limit on certain defenses. Change of plan. Conversion to level premium disability insurance. Misstated age or sex. Conformity with state statutes. Dividends. Dates. Termination.

**ADDITIONAL BENEFITS (if any)**

**APPLICATION**

THIS SUBSTITUTE POLICY IS ISSUED ON THE REPRESENTATION THAT THE ORIGINAL POLICY HAS BEEN LOST OR DESTROYED IT MAY NOT BE AN EXACT DUPLICATION OF THE ORIGINAL POLICY.

RR.NCDI.(0101).FL

May 15, 2017

Angela N. Bichler

Director - DI Risk Management

## BENEFITS AND PREMIUMS

Date of Issue - November 14, 2003 - Substitute Policy 2017

| Plan and Additional Benefits | Full Benefit Per Month | Quarterly Premium | Remaining Years Payable |
|---|---|---|---|
| Disability Income with 2-Year Initial Period Option | $11,806 | $1,054.78 | 24 Years |
| Indexed Income Benefit Coverage Percentage - 100% | | $389.93 | 24 Years |

Future Increase Benefit is not in effect on this policy.

Renewal of coverage beyond age 65 may require an increase in the premium. See Section 4.

A premium is payable on every June 14, September 14, December 14 and March 14.

The current premium is $1,444.71.

The premium for this policy is on a nonsmoker basis for Occupation Class 4A.

| | |
|---|---|
| Beginning Date | 91st day of disability in the first 180 days after the start of disability. |
| Maximum Benefit Period | To the first policy anniversary (March 14, 2041) following the Insured's 65th birthday, but not less than 24 months of benefits. |

Definition of Total Disability
2-Year Initial Period Option selected (see "2-Year Initial Period Option").

| | |
|---|---|
| **Owner** | David A Burstyn, the Insured |
| **State of Issue** | Florida |

| | | | |
|---|---|---|---|
| **Insured** | David A Burstyn | **Age and Sex** | 28 Male |
| **Policy Date** | March 14, 2004 | **Policy Number** | D1 521 442 |
| **Plan** | Disability Income | | |

Exclusions--See Section 3.

**BENEFITS AND PREMIUMS**
Date of Issue - November 14, 2003 - Substitute Policy 2017

**Table of Quarterly Premiums Per $100 of Increase in Full Benefit For Use Under the Future Increase Benefit**

| For Policy Years Beginning March 14, | Disability Income Benefit $ | Indexed Income Benefit $ |
|---|---|---|
| 2018 | 18.24 | 5.24 |
| 2019 | 19.03 | 5.38 |
| 2020 | 19.88 | 5.47 |
| 2021 | 20.73 | 5.52 |
| 2022 | 21.58 | 5.61 |
| 2023 | 22.49 | 5.64 |
| 2024 | 23.37 | 5.69 |
| 2025 | 24.27 | 5.69 |
| 2026 | 25.12 | 5.69 |
| 2027 | 26.06 | 5.64 |
| 2028 | 27.02 | 5.58 |
| 2029 | 27.96 | 5.50 |
| 2030 | 28.78 | 5.35 |
| 2031 | 29.37 | 5.16 |
| 2032 | 29.88 | 4.90 |
| 2033 | 30.22 | 4.59 |
| 2034 | 30.36 | 4.45 |
| 2035 | 30.36 | 4.45 |
| 2036 | 30.36 | 4.45 |
| 2037 | 30.36 | 4.45 |
| 2038 | 30.36 | 4.45 |
| 2039 | 30.36 | 4.45 |
| 2040 | 30.36 | 4.45 |

| | | | |
|---|---|---|---|
| **Insured** | David A Burstyn | **Age and Sex** | 28 Male |
| **Policy Date** | March 14, 2004 | **Policy Number** | D1 521 442 |
| **Plan** | Disability Income | | |

Exclusions--See Section 3.

(This page has been left blank intentionally.)

# SECTION 1. GENERAL TERMS AND DEFINITIONS

This policy provides benefits when the Insured is totally or partially disabled. Section 1 gives information about or the meaning of several terms that are used in the policy.

## 1.1 INSURED AND OWNER

The Insured and Owner are named on page 3.

## 1.2 TERMS ON SCHEDULE OF BENEFITS AND PREMIUMS

The schedule of Benefits and Premiums (page 3) has a number of important terms that are used in this policy. These terms are:

**Full Benefit.** This is the maximum amount of monthly income payable under this policy.

**Beginning Date.** This is the date on which benefits begin to accrue after the Insured becomes disabled. Benefits are not payable for the time the Insured is disabled before the Beginning Date. Days of disability due to different causes will be accumulated to satisfy the Beginning Date.

**Maximum Benefit Period.** This is the longest period of time that benefits are payable for disability. In determining the maximum length of time for which benefits are payable, periods of total and partial disability are added together.

## 1.3 REGULAR OCCUPATION

The words "regular occupation" mean the occupation of the Insured at the time the Insured becomes disabled. If the Insured is regularly engaged in more than one occupation, all of the occupations of the Insured at the time the disability starts will be combined together to be the "regular occupation." "Regular occupation" is not restricted to a specific company or industry.

## 1.4 TOTAL DISABILITY

The Insured is totally disabled when unable to perform the material and substantial duties of the regular occupation.

If the Insured can perform one or more of the material and substantial duties of the regular occupation, the Insured is not totally disabled; however, the Insured may qualify as partially disabled.

**The Owner may have selected a different definition of total disability. The Schedule of Benefits and Premiums (page 3) indicates if a different definition applies. If a different definition does apply, refer to the Option for the definition of Total Disability.**

## 1.5 PARTIAL DISABILITY

The Insured is partially disabled when:

a. the Insured is unable:
   - to perform one or more of the material and substantial duties of the regular occupation; or
   - to spend as much time at the regular occupation as before the disability started;

b. the Insured has at least a 20% Loss of Earned Income that is caused by the disability for which claim is made; and

c. the Insured is gainfully employed in an occupation.

During a period of Partial Disability following the Beginning Date, the Proportionate Benefit may be payable. Until the Proportionate Benefit has been payable for six months, the Insured need not have a 20% Loss of Earned Income to be partially disabled if:

- the Insured is unable to perform one or more material and substantial duties which accounted for at least 20% of the time the Insured spent at the regular occupation before the disability started; or
- the Insured has at least a 20% loss of time spent at the regular occupation.

### 1.6 LICENSED PHYSICIAN

Licensed Physician means a physician, other than the Insured, who is acting within the scope of his or her license. If disability is due to a mental or nervous condition, Licensed Physician means psychiatrist or licensed doctoral level psychologist other than the Insured.

### 1.7 REGULAR CARE OF A LICENSED PHYSICIAN

Regular Care of a Licensed Physician means personal and in-person care and treatment by a Licensed Physician trained to treat the condition causing the disability. The care and treatment received by the Insured shall be in accordance with the medical standard of care appropriate to the condition causing the disability. The care and treatment shall be designed to lead to the Insured being able to return to the material and substantial duties of the regular occupation or gainful employment in any occupation.

If the Company determines that Regular Care of a Licensed Physician would be of no further use to the Insured, the requirement of such care will be waived.

### 1.8 CONSUMER PRICE INDEX

A consumer price index is used to determine the Indexing Factor as described in section 2.4 of this policy. The consumer price index used in this policy is the Consumer Price Index for All Urban Consumers, United States City Average, All Items ("CPI-U"). The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found by the Company to serve the same purpose.

The "consumer price index for the year the disability started" is the CPI-U for the fourth month before the start of disability. The "consumer price index for the current year of disability" is the CPI-U for the fourth month before the most recent anniversary of the start of disability.

## SECTION 2. BENEFITS

### 2.1 DISABILITIES COVERED BY THE POLICY

Benefits are provided for the Insured's total or partial disability only if:

- the Insured becomes disabled while this policy is in force;
- the Insured is under the Regular Care of a Licensed Physician during disability;
- the disability results from an accident that occurs or a sickness that first appears while this policy is in force; and
- the disability is not excluded under Section 3.

No benefits are provided for any period during which the Insured is not under the Regular Care of a Licensed Physician.

No reduction in benefits shall be put into effect because of an increase in Social Security disability benefits during a benefit period.

### 2.2 FULL BENEFIT

The Full Benefit is payable at the end of the month for each month of total disability between the Beginning Date and the end of the Maximum Benefit Period when the Insured is not gainfully employed in any occupation. When such disability lasts for a part of a month, 1/30th of the Full Benefit will be payable for each day of such disability. If the Full Benefit is not payable under the terms of this contract, the Proportionate Benefit may be payable.

## 2.3 PROPORTIONATE BENEFIT

If the Full Benefit is not payable, the Proportionate Benefit is payable at the end of the month for each month of disability between the Beginning Date and the end of the Maximum Benefit Period. When such disability lasts for a part of a month, 1/30th of the Proportionate Benefit will be payable for each day of such disability.

## 2.4 HOW THE PROPORTIONATE BENEFIT IS DETERMINED

The Proportionate Benefit is intended to compensate for a loss of earned income caused by the Insured's disability. The amount of each monthly benefit is the Full Benefit multiplied by Loss of Earned Income and divided by Base Earned Income. Thus, the Proportionate Benefit amount equals:

$$\text{Full Benefit X } \frac{\text{Loss of Earned Income}}{\text{Base Earned Income}}$$

However, if the Insured has at least an 80% Loss of Earned Income, the Proportionate Benefit amount will be 100% of the Full Benefit. In no event will the amount payable be more than 100% of the Full Benefit.

**Choice of Benefit Amount for First Six Months.** For each of the first six months in which a Proportionate Benefit is payable, the Owner may choose:

- to receive 50% of the Full Benefit; or
- to receive a Benefit based on Loss of Earned Income.

The Owner may alternate between these two choices as to each of the six months. However, the Owner may not change the choice after the Benefit is paid for that month.

The Choice of Benefit Amount does not apply to a Transition Benefit payable under section 2.5.

**Loss of Earned Income.** This is:

- the Insured's Base Earned Income; less
- the Insured's Earned Income for the month for which the Benefit is claimed.

The Loss of Earned Income must be caused by the disability for which claim is made.

**Earned Income.** For an Insured who is an employee, Earned Income is:

- the sum of salary, bonuses and commissions paid to the Insured as reported for federal income tax (FIT) purposes; plus
- amounts earned by the Insured which would have resulted in current taxable employee compensation, but instead were contributed by the Insured to a benefit or retirement plan; less
- unreimbursed employee business expenses as reported by the Insured for FIT purposes.

For an Insured who is an owner of a sole proprietorship or a partnership interest, Earned Income is based on amounts as reported for FIT purposes on individual and business tax returns and is:

- the share of gross income from each business, earned by the Insured or others under the Insured's supervision or direction; less
- the Insured's share of normal and customary business expenses. (However, any form of compensation for the Insured's spouse is not deducted as an expense unless the spouse was a paid employee working at least 30 hours per week in the business during the 30 day period before the start of disability.)

For an Insured who is an owner-employee of a corporation or who has Earned Income from more than one source, Earned Income is calculated using all five items of Earned Income as described above.

For amounts in the current or recently ended tax year which have not yet been reported on FIT returns, the calculations above will be based on amounts that will be reported for FIT purposes. Earned Income is determined before the deduction of federal, state and local income taxes. Earned Income does not include forms of unearned income such as: benefits from disability coverage, from deferred compensation, or from retirement plans; dividends; interest; or annuity payments.

At the time a claim for a Proportionate Benefit begins, the Owner must choose:

- to have all items of Earned Income, as described above, credited to the period in which they are earned (accrual basis); or
- to have all items of Earned Income, as described above, credited to the period in which they are received (cash basis). However, income received during a period of disability for work performed prior to the start of the period of disability will not be included in income during the period of disability.

The accounting basis chosen by the Owner will be used to determine both Base Earned Income and Earned Income during a period of disability.

**Base Earned Income.** During the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured for:

- a 12 consecutive month period during the 24 month period before the start of disability; or
- any two of the three calendar years before the start of disability.

The period which generates the highest average (and therefore the highest benefit amount) will be used.

After the first 12 months of a disability, Base Earned Income is the average monthly Earned Income of the Insured multiplied by an Indexing Factor. The Indexing Factor is:

- the consumer price index for the current year of disability; divided by
- the consumer price index for the year the disability started.

Thus, after 12 months of a disability, Base Earned Income equals:

$$\text{average monthly Earned Income} \times \frac{\text{consumer price index for the current year of disability}}{\text{consumer price index for the year disability started}}$$

In the event the Indexing Factor is less than one, a value of one will be used.

**Annual Reconciliation.** The Company has the right to conduct annual reconciliations to assess whether Earned Income during a period of disability is consistent with income tax returns. Benefit underpayments discovered as a result of the reconciliation process will be paid to the Owner. The Company has the right to recover benefit overpayments discovered as a result of the reconciliation process.

## 2.5 TRANSITION BENEFIT

If the Insured demonstrates a continued Loss of Earned Income, the Company will pay a Proportionate Benefit for up to the first 12 months after the Insured's recovery from a disability, provided:

- the Insured was disabled until the Beginning Date;
- the Insured has returned to continuous full-time employment;
- the Insured has at least a 20% Loss of Earned Income for the month for which the benefit is claimed; and
- the month for which the benefit is claimed is within the Maximum Benefit Period.

The amount of this Benefit will be determined under section 2.4. A Loss of Earned Income is used to determine the amount of Transition Benefit to the extent that it is caused by the disability from which the Insured has recovered.

A disability occurring while the Transition Benefit is payable is considered as a continuation of the previous disability.

This Benefit is payable for up to 12 months for each separate disability. For any month this Benefit is payable, premiums will be waived.

## 2.6 TRANSPLANT DONOR

If the Insured donates an organ for transplant to another person, a disability caused by the donation will be considered as caused by sickness.

### 2.7 LIFETIME BENEFIT FOR PRESUMPTIVE TOTAL DISABILITY

Even if the Insured is able to work, the Insured will be considered totally disabled if the Insured incurs the total and irrecoverable loss of:

- sight in both eyes;
- use of both hands;
- use of both feet;
- use of one hand and one foot;
- speech; or
- hearing in both ears.

The Full Benefit is payable for this loss provided: the loss occurs while this policy is in force; the loss occurs before the first policy anniversary that follows the 65th birthday of the Insured; the loss results from an accident or sickness; and the loss is not excluded under Section 3. The Insured does not need to be under the care of a physician.

The Full Benefit for the loss:

- is payable monthly;
- starts with the date of loss, not the Beginning Date;
- is payable for as long as the loss continues during the lifetime of the Insured; and
- is in lieu of other benefits payable for total or partial disability.

### 2.8 WAIVER OF PREMIUM BENEFIT

The Company will waive premiums which become due on this policy while the Insured is totally or partially disabled if the disability lasts for at least 90 days.

The Waiver of Premium Benefit is not limited by the Maximum Benefit Period but is subject to the Limitation While the Insured is Outside the United States (section 3.3) and the Limitation for Mental Disorder and Substance Abuse or Dependency (section 3.4).

If premiums are waived, the Company will also refund that portion of a premium paid which applies to a period of disability beyond the policy month in which the disability began. If a premium is to be waived on a policy anniversary, an annual premium will be waived.

The Company will not waive the payment of premiums after the end of the disability (except where the waiver continues under section 2.5). The Owner may then keep the policy in force by resuming the payment of premiums as they become due.

### 2.9 REHABILITATION BENEFIT

At the Insured's request, the Company will consider joining in a program to rehabilitate the Insured. The Company's role in the program will be determined by written agreement with the Insured. Benefits will continue during the program under the terms of the agreement.

### 2.10 DISABILITY WITH MULTIPLE CAUSES

If the Insured is disabled from more than one cause, the amount and duration of benefits will not be more than that for any one of the causes.

### 2.11 BENEFITS FOR SEPARATE DISABILITIES

Each separate time the Insured is disabled, a new Beginning Date and Maximum Benefit Period start. A disability is considered a separate disability if:

- Full, Proportionate, or Transition Benefits were, but no longer are, payable for the earlier disability; and either
  - the cause of the later disability is not medically related to the cause of the earlier one, and the Insured had resumed on a full-time continuous basis the material and substantial duties of an occupation for at least 30 consecutive days; or
  - the cause of the later disability is related to the cause of the earlier one, and the later disability starts at least 12 months (or 6 months if this contract has a 24 month or 60 month Maximum Benefit Period) after Full, Proportionate, or Transition Benefits ceased being payable for the earlier one.

All other disabilities are considered to be a continuation of the prior disability.

# SECTION 3. EXCLUSIONS AND LIMITATIONS

## 3.1 PRE-EXISTING CONDITIONS

There will be no benefits for a disability or loss that:

- results from an accident that occurred within two years before the Date of Issue; or
- results from a sickness that existed within two years before the Date of Issue

if the accident or sickness was not disclosed or was misrepresented in the application.

## 3.2 OTHER EXCLUSIONS

There will be no benefits for a disability or loss that results from or is caused by or contributed to by:

- an act or incident of war, declared or undeclared;
- the suspension, revocation or surrender of a professional or occupational license or certificate; or
- the commission of or attempt to commit a felony.

There will be no benefits for a disability or loss:

- for any period the Insured is incarcerated; or
- that is excluded from coverage by an Agreement for Limitation of Coverage.

## 3.3 LIMITATION WHILE THE INSURED IS OUTSIDE THE UNITED STATES

Benefits will not be provided for more than 6 monthly benefit periods in total for the life of the policy while the Insured is outside the United States.

## 3.4 LIMITATION FOR MENTAL DISORDER AND SUBSTANCE ABUSE OR DEPENDENCY

Benefits will not be provided for more than 24 monthly benefit periods in total for the life of the policy for all disabilities or losses primarily due to any mental disorder, or substance abuse or dependency. This limitation will not apply if, at the end of 24 months of benefits, the Insured is confined in a hospital and is continuously confined thereafter. For purposes of this limitation:

"Mental disorder" is any disease, condition or disorder, whether organic or inorganic, customarily within the scope of treatment of psychiatrists, psychologists, psychotherapists or counselors. This includes, but is not limited to:

- psychosis, psychoneurosis, anxiety and depression; and
- behavioral, adjustment, emotional, personality and stress-related disorders.

"Substance abuse or dependency" includes drug abuse, alcohol abuse or chemical dependency.

"Hospital" means a legally operated facility identified as a hospital and providing full-time medical care and treatment under the direction of a full-time staff of licensed physicians. "Hospital" does not include rest homes, nursing homes, convalescent homes, homes for the aged, and facilities primarily affording custodial, educational or rehabilitative care.

# SECTION 4. CONDITIONAL RIGHT TO RENEW TOTAL DISABILITY COVERAGE TO AGE 75

On each policy anniversary between the Insured's 65th and 75th birthdays, the Owner may renew this policy for one year if:

- the Insured is not disabled;
- the Insured is actively and gainfully employed at least 30 hours per week; and
- premiums to renew this policy are paid.

This right to renew ends on the first policy anniversary on which the Insured is not so employed, or is disabled, or on which the Owner chooses not to renew the policy.

For a policy that is renewed, benefits are provided only for total disability. The total disability must be one:

- which occurs while this policy is in force; or
- which commences within 30 days of an accident which occurred while this policy was in force, provided the disability results from the accident.

The premium for each year of renewal will be based on the Insured's age and the Company's rates in use at the time of renewal.

# SECTION 5. CLAIMS

## 5.1 CLAIM FOR POLICY BENEFITS

**Notice of Claim.** To start a claim for benefits, written notice of claim must be given to the Company within 60 days after the start of any loss covered by this policy. If the notice cannot be given within 60 days, it must be given as soon as reasonably possible. The notice should:

- give the Insured's name and policy number; and
- be sent to the Home Office or be given to an authorized agent of the Company. Mail sent to the Home Office should be addressed as follows:

  The Northwestern Mutual Life Ins. Co.
  Attn: Disability Benefits
  720 East Wisconsin Avenue
  Milwaukee, Wisconsin 53202

**Proof of Loss.** For a claim to be payable, the Company must be provided with satisfactory written proof of loss. This is information that the Company deems necessary to determine whether benefits are payable, and if so, the amount of the benefits. The proof of loss will include, for both before and after the disability started, information about the Insured's health, occupational duties, income (including income tax returns for the Insured and for businesses in which the Insured has or had an interest), overhead expenses and disability benefits along with other information as may be required by the Company from time to time. The Company will also need to be provided information as described below under "Other Requirements."

**Claim Forms.** The Company will furnish claim forms for an initial written proof of loss within 15 days after receiving notice of claim. These forms will need to be completed by the Owner, the Insured and the Insured's physician. If these forms are not furnished within the 15 day period, this initial written proof of loss may be made without the use of the Company's forms.

The Company will furnish additional claim forms from time to time while a claim for monthly benefits continues.

**Written Proof of Loss.** Written proof of loss must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed. If the proof is not given within the 90 days, the claim will not be affected if the proof is given as soon as reasonably possible. In any event, the proof required must be given no later than one year and 90 days after the end of each monthly period for which benefits are claimed unless the Owner was legally incapacitated.

**Other Requirements.**

- **Authorizations.** From time to time, the Company will furnish the Insured with authorizations to obtain and disclose information. These authorizations must be signed by the Insured without alterations and returned to the Company.
- **Medical Examination.** The Company may have the Insured examined by a health care practitioner.
- **Personal Interview.** The Company may require the Insured to submit to a personal interview.
- **Financial Examination.** The Company may examine the financial records of the Insured and/or the Owner and the financial records of all businesses, trusts, or other legal entities owned, operated or controlled by the Insured and/or the Owner.
- **Vocational Rehabilitation Assessment.** The Company may have the Insured evaluated by a vocational rehabilitation assessor.
- **Functional Capacities Evaluation.** The Company may require the Insured to submit to a functional capacities evaluation.

These requirements will be performed:

- at the Company's expense;
- by an examiner or interviewer of the Company's choice; and
- as often as is reasonably necessary in connection with a claim.

### 5.2 TIME OF PAYMENT OF CLAIMS

When the Company has received satisfactory proof of loss and other information as required by section 5.1 and the Company has determined that benefits are payable, the Company will pay benefits on a monthly basis.

### 5.3 PAYMENT OF CLAIMS

Benefits will be paid to the Owner or to the Owner's estate.

### 5.4 LEGAL ACTIONS

No legal action may be brought for benefits under this policy within 60 days after written proof of loss has been given. No legal action may be brought after the applicable statute of limitations has run from the time written proof is required to be given.

## SECTION 6. OWNERSHIP

### 6.1 POLICY RIGHTS

All policy rights may be exercised by the Owner, or the Owner's successor or transferee.

### 6.2 TRANSFER OF OWNERSHIP

The Owner may transfer the ownership of this policy. Written proof of transfer satisfactory to the Company must be received at its Home Office. The transfer will take effect as of the date it was signed. The Company may require that the policy be sent to its Home Office for endorsement to show the transfer.

### 6.3 COLLATERAL ASSIGNMENT

The Owner may assign this policy as collateral security. The Company is not responsible for the validity or effect of a collateral assignment. The Company will not be responsible to an assignee for any payment or other action taken by the Company before receipt of the assignment in writing at its Home Office.

A collateral assignee is not an Owner. A collateral assignment is not a transfer of ownership. Ownership can be transferred only by complying with section 6.2.

# SECTION 7. PREMIUMS AND REINSTATEMENT

## 7.1 PREMIUMS

**Payment.** All premiums after the first are payable at the Home Office or to an authorized agent. A premium must be paid on or before its due date. A receipt signed by an officer of the Company will be furnished on request.

**Frequency.** Premiums may be paid annually, semi-annually or quarterly at the published rates of the Company. A change in premium frequency will take effect on the Company's acceptance of the premium for the new frequency. Premiums may be paid on any other frequency approved by the Company.

**Grace Period.** A grace period of 31 days will be allowed for payment of a premium that is not paid on its due date. This policy will be in full force during this period.

The policy will terminate at the end of the grace period if the premium is not paid.

**Premium Refund at Death.** The Company will refund that portion of any premium paid for a period beyond the date of the Insured's death.

**Premium Refund At Cancellation.** The Owner may cancel this policy by giving written notice to the Company at the Home Office. The cancellation will take effect on the date of receipt at the Home Office or on a later date if specified in the notice. The Company will promptly refund the portion of the premium paid for the period beyond the date that the cancellation takes effect. Cancellation will be without prejudice to any claim originating before the effective date of cancellation.

## 7.2 REINSTATEMENT

**Within Late Payment Period.** The late payment period is the first 31 days after the grace period. Within the late payment period, the policy will be reinstated as of the date the overdue premium is paid. No evidence of insurability will be required.

**After the Late Payment Period.** After the late payment period, the policy may be reinstated within 12 months from the effective date of the policy termination. The overdue premium must be paid to the Company. The Company will also require an application for reinstatement and evidence of insurability. The policy will be reinstated as of the date the overdue premium was paid to the Company if:

- the application is approved by the Company; or
- notice that the application has been disapproved is not given within 45 days from the date the Company receives the application.

The policy will be reinstated as of the date the Company accepts the overdue premium if the Company does not require an application.

**Coverage.** The reinstated policy will cover only a disability that results from an accident that occurs, or from a sickness that first appears, after the date of reinstatement. The Company may attach new provisions and limitations to the policy at the time of reinstatement. All other rights of the Owner and the Company will remain the same.

**Duty With Armed Forces.** If the policy terminates while the Insured is on active duty with the armed forces of any nation or group of nations, the policy may be reinstated without evidence of insurability. The policy will be reinstated as of the date a written request and the pro-rata premium for coverage until the next premium due date are received by the Company. The request must be received:

- no later than 90 days after the Insured's release from active duty; and
- no later than five years after the due date of the unpaid premium.

# SECTION 8. THE CONTRACT

### 8.1 ENTIRE CONTRACT; CHANGES

This policy with the application and attached endorsements is the entire contract between the Owner and the Company. No change in this policy is valid unless approved by an officer of the Company. The Company may require that the policy be sent to it to be endorsed to show a change. No agent has authority to change the policy or to waive any of its provisions.

### 8.2 TIME LIMIT ON CERTAIN DEFENSES

After two years from the Date of Issue, only fraudulent misstatements in the application may be used to void the policy or deny any claim for loss incurred or liability starting after the two year period.

### 8.3 CHANGE OF PLAN

The Owner may change this policy to any plan of disability insurance agreed to by the Owner and the Company. The change will be subject to:

- payment of required costs; and
- compliance with other conditions required by the Company.

All premiums and dividends after the date of change will be the same as though the new plan had been in effect since the Policy Date.

### 8.4 CONVERSION TO LEVEL PREMIUM DISABILITY INSURANCE

The Owner may convert the Annually Renewable Premium (ARDI) coverage, if any, shown on page 3 to a level premium disability income insurance policy. The conversion may be done on or before the conversion date shown on page 3. No evidence of insurability will be required. Conversion is not available if the premiums are being waived for this policy.

A portion of the ARDI coverage may be converted, subject to conditions set by the Company.

The new policy will be in the form and have the same terms as policies being issued by the Company at the time of conversion. The terms available for the new policy will be based on the classification of risk of this policy. The new policy will have the following terms:

- the amount of the Full Benefit will be the amount of benefit converted;
- the Maximum Benefit Period will not be longer than the Maximum Benefit Period of this policy;
- the Beginning Date will be any Beginning Date offered at the time the new policy is purchased that is not earlier than the Beginning Date of this policy; and
- the new policy will be issued with additional benefits which are on the converted coverage and which are then available to new Insureds.

**Limitations of Coverage.** The new policy will include any Agreement for Limitation of Coverage that is a part of this policy.

**Premium.** The premium for the new policy is determined as of its date of issue by:

- the Company's premium rates then in effect in the state where the Insured then resides;
- the Insured's age on the policy date of the new policy;
- the plan and amount of insurance issued; and
- the classification of risk of this policy.

**Cost of Conversion.** The cost of conversion will be the first premium for the new policy less any dividend and premium credit for the benefit amount converted.

**Effective Date.** The new policy takes effect on the date the Company receives the application or the cost of conversion, whichever is later.

**8.5 MISSTATED AGE OR SEX**

If the age or sex of the Insured has been misstated, the benefits will be those which the premiums paid would have purchased at the correct age or sex.

**8.6 CONFORMITY WITH STATE STATUTES**

Any provisions of this policy which, on the Date of Issue, are in conflict with the statutes of the State of Issue on that Date are amended to conform to such statutes. The State of Issue is shown on page 3.

**8.7 DIVIDENDS**

This policy will receive its share, if any, of the divisible surplus of the Company. Divisible surplus is determined annually. This policy's share will be credited as an annual dividend.

Dividends will be:

- used to reduce premiums; or
- paid to the Owner when premiums are being waived.

**8.8 DATES**

Provided the first premium is paid, this policy will take effect on the Date of Issue at 12:01 a.m. Standard Time in the State of Issue. Policy months, years and anniversaries are computed from the Policy Date. Both dates are shown on page 3 of this policy.

**8.9 TERMINATION**

If premiums are paid when due, this policy will not terminate until the first policy anniversary following the 65th birthday of the Insured or, if later, when the right to renew the policy ends (see Section 4). However, if the Insured is disabled on the date determined above, the termination will not take effect until benefits are no longer payable due to that disability. The time of termination will be 11:59 p.m. Standard Time in the State of Issue on the date the policy terminates.

# 2-YEAR INITIAL PERIOD OPTION

## 1. TOTAL DISABILITY

This 2-Year Initial Period Option replaces section 1.4 of this policy with the following:

During the first 24 months of disability following the Beginning Date, the Insured is totally disabled when unable to perform the material and substantial duties of the regular occupation. After the first 24 months of disability following the Beginning Date, the Insured is totally disabled when both unable to perform the material and substantial duties of the regular occupation and not gainfully employed in any occupation.

If the Insured can perform one or more of the material and substantial duties of the regular occupation, the Insured is not totally disabled; however, the Insured may qualify as partially disabled.

In this Option, the words "this policy" mean the policy to which this Option is attached.

## 2. FULL BENEFIT

The following replaces section 2.2 of this policy:

The Full Benefit is payable at the end of the month for each month of total disability between the Beginning Date and the end of the Maximum Benefit Period. When such disability lasts for a part of a month, 1/30th of the Full Benefit will be payable for each day of such disability.

## 3. TERMINATION

This Option will terminate on the earliest of the following dates:

- the date of termination of this policy; or
- the date on which the Home Office receives the Owner's written request.

Secretary
THE NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY

RR.DI.TYI.(0101).FL

# INDEXED INCOME BENEFIT (COST OF LIVING ADJUSTMENT)

## 1. THE BENEFIT

After the first 12 months of a disability, the Company will provide an indexed benefit each month in addition to the benefit for that month under Section 2 of the policy. The indexed benefit will be based on the coverage percentage and changes in a consumer price index, subject to certain limits explained in Section 2 of this Benefit. The coverage percentage is the percent of monthly benefit that is indexed under this Benefit.

The premiums and the coverage percentage for this Benefit are shown on page 3.

## 2. HOW THE INDEXED BENEFIT IS DETERMINED

The indexed benefit starts on the first anniversary of the start of disability and is subject to the limits described in this section. The indexed benefit each month is:

- the benefit for that month under Section 2 of the policy; times
- the coverage percentage; times
- the Indexing Factor minus one.

The Indexing Factor is:

- the consumer price index for the current year of disability; divided by
- the consumer price index for the year the disability started.

Thus, the indexed benefit equals:

$$\begin{matrix}\text{the benefit}\\ \text{under Section 2}\\ \text{of the policy}\end{matrix} \times \begin{matrix}\text{coverage}\\ \text{percentage}\end{matrix} \times \left[\frac{\text{consumer price index for the current year of disability}}{\text{consumer price index for the year the disability started}} - 1\right]$$

**Protection Against Decreases of Indexed Benefits.** The indexed benefit will not decrease as a result of a decrease in the consumer price index. In such a case, the Indexing Factor used for the prior year will be used for the current year.

**Limit on Indexed Benefit.** The indexed benefit for each month will not be greater than the indexed benefit calculated above but using an Indexing Factor of one increased at a rate of 6% compounded annually for each full year of continuing disability.

**Consumer Price Index.** The "consumer price index for the year the disability started" is the Consumer Price Index for All Urban Consumers, United States City Average, All Items (CPI-U) for the fourth month before the start of disability. The "consumer price index for the current year of disability" is the CPI-U for the fourth month before the most recent anniversary of the start of disability. The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found by the Company to serve the same purpose.

**Separate Disabilities.** The indexed benefit starts anew each separate time the Insured is disabled under the terms of the policy, as though there had been no prior disability.

**Limit if Lifetime Benefit.** When benefits are payable due to a Lifetime Benefit, there will be a limit on increases as follows:

**Lifetime Benefit for Total Disability.** The indexed benefit will not increase on or after the first policy anniversary following the Insured's 65th birthday.

**Lifetime Benefit for Presumptive Total Disability.** The indexed benefit will not increase on or after the last day of the Maximum Benefit Period stated on page 3 (exclusive of any extension of the Maximum Benefit Period due to the Lifetime Benefit for Total Disability).

**Conditional Renewal Excluded.** This Benefit will not be in force if the policy is in force under the Conditional Right to Renew Total Disability Coverage to Age 75.

## 3. SOCIAL INSURANCE SUBSTITUTE (SIS) BENEFIT

This policy may have the SIS Benefit. If so, "the benefit for that month under Section 2 of the policy" is that benefit as increased by the terms of the SIS Benefit.

## 4. TERMINATION

This Benefit will terminate on the earliest of the following dates:

- the date the policy terminates;
- the date the Home Office receives the Owner's written request; or
- the first policy anniversary that follows the Insured's 65th birthday unless the Insured is disabled on that date. In that case, the date of termination will be the date benefits are no longer payable under the policy.

Raymond J. Manista

Secretary
THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

# FUTURE INCREASE BENEFIT (FIB)

## 1. THE BENEFIT

The Company will annually index the Full Benefit on each policy anniversary to reflect increases in consumer price levels, subject to the terms and conditions in this Benefit. The increased coverage which results from the indexing will remain in effect for as long as the policy is in force and premiums are paid for the increased Full Benefit. Any benefit that is based on the amount of the Full Benefit will be increased in proportion to the increase in the Full Benefit.

**Increases Deferred During Disability.** Increases will not be made during a period for which premiums are waived. However, increases that would have been made during a period of disability but for the limitation in the prior sentence will take effect after premiums cease to be waived. The increases will be in effect for a separate disability suffered by the Insured (see Benefits for Separate Disabilities section of the policy). The period for which premiums are waived includes any period for which the Transition Benefit is payable.

## 2. PREMIUM INCREASE

The premium for this policy will increase on the same date as each increase in the Full Benefit takes effect. The amount of each premium increase will be based on the increase in the Full Benefit and the premium rates shown on page 3A.

When the Full Benefit is increased, the Company will provide an amendment to the schedule of Benefits and Premiums.

## 3. HOW AN INCREASED FULL BENEFIT IS DETERMINED

The Full Benefit for a policy year will be the Full Benefit for the prior policy year multiplied by the Indexing Factor. For purposes of determining the amount of the increase, the "Full Benefit" will be the sum of the disability income Full Benefit and any Social Insurance Substitute Full Benefit. The increase will be subject to a minimum and maximum described below. The Indexing Factor is:

- the consumer price index for the prior calendar year; divided by
- the consumer price index for the next prior calendar year.

Thus, the new Full Benefit equals:

$$\text{prior year Full Benefit} \times \frac{\text{consumer price index for the prior calendar year}}{\text{consumer price index for the next prior calendar year}}$$

**Minimum and Maximum Increase.** The Full Benefit for a policy year will not be less than 100% of the Full Benefit for the prior policy year. The Full Benefit for a policy year will not be more than 106% of the Full Benefit for the prior policy year.

**Consumer Price Index.** The "consumer price index for the prior calendar year" is the Consumer Price Index for All Urban Consumers, United States City Average, All Items (CPI-U) for the month of September of the prior calendar year. The "consumer price index for the next prior calendar year" is the CPI-U for the month of September for the calendar year before the prior calendar year.

The CPI-U is published by the Bureau of Labor Statistics. If the method for determining the CPI-U is changed, or if it is no longer published, it will be replaced by some other index found by the Company to serve the same purpose.

## 4. WHEN INCREASES IN THE FULL BENEFIT OCCUR

Except for increases that are deferred during a period for which premiums are waived, an increase in the Full Benefit will occur on each policy anniversary if the Owner has the right to receive increases at that time. The right to receive increases starts on the first policy anniversary and continues until:

- the Owner refuses two increases; or
- the last date on which this Benefit is in effect, as stated on page 3, if earlier.

The Owner can refuse to accept an increase:

- by not paying the increased premium resulting from this Benefit; or
- by sending a written notice to the Home Office of the Company before the increase takes effect.

If increases have stopped due to two refusals of increases, or because the Insured did not meet the Company's financial underwriting standards when this Benefit was previously renewable, the Owner will regain the right to receive further increases starting on the earlier of:

- the date, if any, this Benefit may be renewed under Section 5 of this Benefit, provided the Insured meets the Company's financial underwriting standards that are then in effect and the renewal date is not later than the first policy anniversary following the 55th birthday of the Insured; or
- the first policy anniversary after the Insured meets all of the Company's standards of insurability that are then in effect. These standards include the Insured's health, activities, and occupation as well as his financial condition.

# POLICY COVERAGE STATEMENT

Policy No. D1 521 442 FEBRUARY 05, 2004

DAVID A BURSTYN

This policy has been issued with terms of coverage other than those applied for, as follows:

Maximum Benefit Period: 5 years.

The premium for this policy is listed on the Schedule of Benefits and Premiums. Please review the policy carefully and discuss it with your agent.

PLEASE KEEP THIS STATEMENT WITH YOUR POLICY

HO COPY

FL028238

# THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

MILWAUKEE, WISCONSIN

Nauid A Barsthyn
INSURED (First, Middle Initial Last)

D1521442
POLICY NUMBER

## DISABILITY INSU...NCE APPLICATION

*Complete entire application for individual business. Complete the application omitting the shaded areas for MultiLife Employer Sponsored Business*

☐ MULTILIFE, Complete Supplement #17-1052. Enter MultiLife Discount Plan Number
CONVERSION, ☐ ARDI ☐ Group LTD Original Policy Number
☐ APB Option ☐ Group LTD APB OPTION ☐ Concurrent Life Application ☐ Concurrent Long Term Care Application ☐ Exam (NM, PME, MD) in Home Office

### INSURED

**1** Has an application or informal inquiry ever been made to Northwestern Mutual Life for annuity, life, or disability insurance on the life of the Insured? ☒ Yes ☐ No If yes, the last policy number is 15064375

A ☒ Mr. ☐ Mrs ☐ Ms ☐ Dr ☐ Other ____ B ☒ MALE ☐ FEMALE

C BIRTHDATE: (M,D,Y) [redacted] D STATE OF BIRTH (or Foreign Country) Florida E TAXPAYER IDENTIFICATION NUMBER: [redacted]

F. PRIMARY RESIDENCE: STREET ADDRESS: 17555 Collins Ave UPH6
CITY, STATE, ZIP (Country if other than U.S.A.): Sunny Isles, FL 33160
E-Mail Address: ____

### APPLICANT

**2** Select ONLY ONE. ☒ Insured OR ☐ Other (Complete A, B and C) ☐ MALE ☐ FEMALE
A ☐ Mr. ☐ Mrs. ☐ Ms. ☐ Dr. ☐ Other ____
PERSONAL NAME: ____ FIRST MIDDLE INITIAL LAST
RELATIONSHIP TO INSURED: ____ BIRTHDATE: ____ MONTH DAY YEAR
OR
BUSINESS NAME: ____
B TAXPAYER IDENTIFICATION NUMBER ____
C. ADDRESS. STREET OR PO BOX ____
CITY, STATE, ZIP (Country if other than U.S.A.): ____
E-Mail Address ____

### PREMIUM PAYER

**3** Select ONLY ONE: ☒ Insurance Service Account Payer (ISA) (Omit A through D below) OR ☐ Insured (Complete D only) ☐ Owner (Complete D only) ☐ Applicant (Complete D only) ☐ Other (Complete A, B, C and D)
A. ☐ Mr. ☐ Mrs. ☐ Ms ☐ Dr. ☐ Other ____ ☐ MALE ☐ FEMALE
PERSONAL NAME: ____ FIRST MIDDLE INITIAL LAST
BIRTHDATE: ____ MONTH DAY YEAR
OR
BUSINESS NAME: ____
B. TAXPAYER IDENTIFICATION NUMBER. ____
C DAYTIME TELEPHONE NUMBER (Area Code) ____
D. ADDRESS: ☐ Insured's Address ☐ Applicant's Address OR
STREET OR PO BOX: ____
CITY, STATE, ZIP (Country if other than U.S.A.) ____
E-Mail Address ____

### OWNER – DO NOT COMPLETE FOR KEYPERSON OR BUYOUT

**4** Select ONLY ONE: ☒ Insured ☐ Applicant ☐ Other (Complete A, B and C)
A ☐ Mr. ☐ Mrs ☐ Ms ☐ Dr. ☐ Other ____ ☐ MALE ☐ FEMALE
PERSONAL NAME: ____ FIRST MIDDLE INITIAL LAST
RELATIONSHIP TO INSURED ____ BIRTHDATE: ____ MONTH DAY YEAR
OR
BUSINESS NAME ____
B TAXPAYER IDENTIFICATION NUMBER ____
C ADDRESS: ☐ Insured's Address ☐ Applicant's Address ☐ Premium Payer's Address OR
STREET OR PO BOX ____
CITY, STATE, ZIP (Country if other than U.S.A.): ____
E-Mail Address: ____

## OCCUPATION

**5**

A. Name of Employer or Business: Actuate Holdings Inc.

B. Product or service the employer provides: Internet marketing

C. Employer's Address STREET OR PO BOX: 11098 Biscayne Blvd Ste 207

CITY, STATE, ZIP (Country if other than U.S.A.): Miami FL 33161

D. PRIMARY Occupation: Internet Marketing → President

E. Other Occupations:

F. Professional Degree or Credentials:

G. Professional Specialty, if any.

H. Describe Insured's occupational duties by stating the percentage of time spent on these duties. All job duties must be included.

25% Managerial/Administration
- Number of employees reporting to the Insured ____
- Total number of employees in the Company ____
- Title of individual Insured reports to ____
- Does the Insured have policy-making authority? ☐ Yes ☐ No
- ____% of time spent in direct involvement with the principal activity of the business (hands-on)

35% Keyboard Work

15% Travel

____% Physical/Manual - provide details: ____

____% of time spent lifting and average weight lifted ____ lbs.

25% Sales

____% of time spent on site or in plant environment

Does the Insured perform any other duties not mentioned above? ☐ Yes ____% Other ____
☐ No

I. Average number of hours worked per week 40 hrs

J. Business located in the home? ☐ Yes ☒ No
Average percentage of time worked per week at the business located in the home ____%.
If over 50%, complete Working From Place of Residence Supplement #90-1065, unless the Insured is a non-owner W2 employee

K. Length of time. In current occupation 3 With current employer 3
If less than 3 years, state prior occupation(s) and employer(s) for last 3 years:

L. State in which employed. FL

M. Is the Insured planning or considering selling a business, or changing occupation, employer or employment status in the next six months?
☐ Yes, please explain: ____ ☒ No

## ADDITIONAL PURCHASE BENEFIT OPTION – COMPLETE THIS SECTION IF EXERCISING AN APB OPTION

**6**

A. For RR series APB
NOTE. If available, up to one APB amount PLUS, on a purchase date on or before the policy anniversary nearest the Insured's 42nd birthday, a one-time Bonus of up to one APB amount.
List the policy number(s) and purchase amount(s) for each option used:

| | | |
|---|---|---|
| Policy 1 ____ | APB Amount $ ____ | Plus Bonus $ ____ |
| Policy 2 ____ | APB Amount $ ____ | Plus Bonus $ ____ |
| Policy 3 ____ | APB Amount $ ____ | Plus Bonus $ ____ |

B. For Pre-RR series APB
NOTE. If available, up to two Regular amounts OR two Special/Advance amounts
List the policy number(s) and purchase amount(s) for each option used:

| | | |
|---|---|---|
| Policy 1 ____ | Regular $ ____ | OR Special/Advance $ ____ |
| Policy 2 ____ | Regular $ ____ | OR Special/Advance $ ____ |
| Policy 3 ____ | Regular $ ____ | OR Special/Advance $ ____ |

Special or Advance purchase applied for within 90 days after: (check one)
☐ 20% increase in net annual earned income since last NML DI policy. Date of salary increase if employee: ___/___/___ (MONTH DAY YEAR)
Date taxes filed if self employed, business owner, or paid by commission only: ___/___/___ (MONTH DAY YEAR)
☐ Marriage ☐ Birth or Adoption of Child * Date of marriage, birth of child, or final decree of adoption: ___/___/___ (MONTH DAY YEAR)
☐ Employer cancelled group DI coverage without replacement on ___/___/___ (MONTH DAY YEAR)

FL028238

INSURED (First, Middle Initial, Last) POLICY NUMBER

## SPECIAL DATING (POLICY DATE) / PREMIUM INFORMATION

7 A Prepaid ☐ Short term – Policy Date will coincide with ISA Payment Date. (For monthly ISA only)
☐ Short term to ___/___/___ (MONTH DAY YEAR) ☐ Date to save age ☐ Backdate to ___/___/___ (MONTH DAY YEAR)

B Non-prepaid ☐ Specified future date ___/___/___ (MONTH DAY YEAR) ☐ Date to save age ☐ Backdate to ___/___/___ (MONTH DAY YEAR)

C. Has the premium for the policy applied for been paid in exchange for the Conditional Disability Insurance Agreement? ☐ Yes ☐ No

D. Premium Frequency: ☐ Annually ☐ Semiannually ☐ Quarterly

E. Will the Insured's employer pay the whole premium for this disability insurance ☐ Yes ☐ No
If yes: 1) Will any part of the premium be included in the Insured's taxable income? ☐ Yes ☐ No
2) Will the Insured reimburse the employer for any part of the premium? ☐ Yes ☐ No

REMINDER: NOT ALL POLICIES OR BENEFITS ARE APPROVED IN ALL STATES

## POLICY APPLIED FOR

8

| | Monthly Benefit | Maximum Benefit Period | Beginning Date | Definition of Total Disability (Select one per policy) |
|---|---|---|---|---|
| ☒ DISABILITY INCOME POLICY | | | | |
| ☒ Non-cancellable and Guaranteed Renewable | | | | ☐ Any Occupation |
| Level (circled) | $ 10,000 | 65 | 91 | ☐ Base Policy Definition |
| ARDI | $ | | | ☒ 2 Year Initial Period |
| Level / ARDI | $ ____ $ ____ | | | ☐ Extended Initial Period |
| ☐ Guaranteed Renewable | | | | ☐ Any Occupation |
| Level | $ | | | ☐ Base Policy Definition |
| ARDI | $ | | | ☐ 2 Year Initial Period |
| Level / ARDI | $ ____ $ ____ | | | ☐ Extended Initial Period |
| ☐ DISABILITY OVERHEAD EXPENSE POLICY | | | | |
| ☐ Business ☐ Professional | | | | |
| Aggregate Benefit ☐ 12 ☐ 24 (times maximum monthly benefit) | | | | |
| Level | $ | | | |
| ARDI | $ | | | |
| Level / ARDI | $ ____ $ ____ | | | |

☐ KEYPERSON POLICY (Complete Keyperson Supplement, form #90-1927)
☐ BUYOUT POLICY (Complete Buyout Supplement, form #90-1928)

## ADDITIONAL BENEFITS

9 If more than one policy is applied for, indicate to which policy(ies) each benefit should be attached.

| Benefit | | Policy Type(s) |
|---|---|---|
| ☐ Additional Purchase Benefit (APB) | $ ____ (APB AMOUNT) | |
| ☐ Business Additional Purchase Benefit (BAPB) | $ ____ (APB AMOUNT) | |
| ☐ Deferred Disability Benefit (DDB) | | |
| ☒ Future Increase Benefit (FIB) | | |
| ☒ Indexed Income Benefit (IIB-Cost of Living adjustment) | | |
| If less than 100% of the monthly benefit is to be indexed, specify percent to be indexed | 0 % | |
| ☐ Social Insurance Substitute Benefit (SISB) | $ ____ (MONTHLY BENEFIT) | |

SISB Beginning Date ____________ (USED ONLY FOR NEW YORK)

For MultiLife Guaranteed Acceptance only
☐ Extended Mental Disorder and Substance Abuse Benefit

**10** If Northwestern Mutual Life is not able to issue the policy and/or additional benefit(s) as applied for, should the Company issue a policy if it can do so in a smaller amount, or on a different plan, or without an additional benefit? .................... ☒ Yes ☐ No

**11** Fill in the amounts that are (or will be) shown on the Insured's individual and/or business income tax returns and supporting schedules. Do not list income that is not reported to the IRS. Use the "Remarks" section to explain significant changes between years or changes since the end of the last calendar year. Losses should be shown in parentheses. NOTE. The Company may request tax forms for underwriting or claim purposes.

A. INSURED'S EMPLOYER OR BUSINESS is a
☐ Sole Proprietorship ☐ Partnership ☐ Limited Liability Company (LLC) ☐ C Corporation
☒ S Corporation ☐ Other ____________

B. 1. Does the Insured have an ownership interest in the Business? .................... ☒ Yes ☐ No
If yes, what is the percentage? 100 %
2. How long has the Insured had ownership in the business? 3

C. Are the most recently filed tax returns or the most recent Form W-2 and pay stub being sent with this application? .......... ☒ Yes ☐ No

Please refer to *Tips for Filling Out the Disability Insurance Application* to determine what columns need to be completed and what documentation must be submitted with the application.

| | 1 Current Year Estimate Jan. 1- Dec. 31, 2003 | 2 Most Recently Ended Calendar Year Jan. 1- Dec. 31, 2002 | 3 Two Calendar Years Ago Jan. 1- Dec. 31, 2001 |
|---|---|---|---|
| D. EARNED INCOME | | | |
| 1. Non-owner employee compensation | | | |
| a) Salary Source: Form W-2 | $[redacted] | $ | $ |
| b) Bonus Source: Form W-2 | $ | $ | $ |
| c) Unreimbursed business expenses. Source: Schedule A of Form 1040 | ($ ) | ($ ) | ($ ) |
| 2. S and C Corporation Owner compensation: (Also see 3 or 4 below) | | | |
| a) Salary Source Form W-2 | $ | $ | $ |
| b) Bonus Source: Form W-2 | $ | $ | $ |
| 3. Share of after-tax C corporation net income or (loss) after expenses if the Insured owns at least 20% of the corporation Source Form 1120 or 1120A | $ | $ | $ |
| 4. Share of S corporation net income or (loss) after expenses if the Insured is actively involved. Source. Form 1120S, Schedule K-1 | $ | $ | $ |
| 5. Sole proprietorship net profit or (loss) after expenses. Source Form 1040, Schedule C | $ | $ | $ |
| 6. Share of partnership net profit or (loss) after expenses Source Form 1065, Schedule K-1 | $ | $ | $ |
| 7. Share of limited liability company net profit or (loss) after expenses Source Form 1065, Schedule K-1 | $ | $ | $ |
| 8. Other earned income (Explain in Remarks) | $ | $ | $ |
| 9. Pension, profit sharing, or before-tax savings contributions (e g , 401(k) plans) that would cease if the Insured were disabled and that the Insured had the option to receive as salary. (Not for SEP, KEOGH, or other amounts not deductible as a business expense) | $ | $ | $ |
| 10. TOTAL EARNED INCOME: Enter total of 1 through 9. | $ | $ | $ |
| E. UNEARNED INCOME: State if more than $5,000. This includes taxable and tax-exempt interest, dividends, capital gains, net rental income, income from businesses in which the Insured is not actively involved, pensions, annuities, and alimony | $ | $ | $ |

F. NET WORTH: Is the Insured's net worth (assets minus liabilities) more than $5,000,000?
If yes, complete a personal balance sheet for the Insured or use Supplement #17-0912. .................... ☐ Yes ☒ No

G. In the last 5 years, has the Insured, or a business in which the Insured has had a 10% or greater ownership interest, been in bankruptcy or defaulted on any loans with an owed balance of more than $10,000? If yes, describe the circumstances and amounts owed in Remarks .................... ☐ Yes ☒ No
Date of Discharge ___/___/___ (MONTH DAY YEAR) Bankruptcy Chapter ______ ☐ Personal ☐ Business

***ADDITIONAL REMARKS – INCOME***

FL028238

INSURED (First, Middle Initial, Last) | POLICY NUMBER

## DISABILITY COVERAGES

**12** A. List and describe all disability benefits the Insured may be entitled to, including individual disability insurance and group disability insurance in all companies, including Northwestern Mutual Life; pension or retirement plans; salary continuation plans; association plans; credit insurance plans; mortgage insurance; overhead expense insurance; and any other coverage which provides disability benefits. Include coverage for which the Insured will become eligible within the next five years after a qualifying period of employment has been met.

**NOTE TO AGENT:** Type = DI (includes Individual DI and SBDI), Interim Term, SIS (includes SSS policy and DI SSSB or SISB rider), LE, LE SISB, Group LTD, Group STD, Association DI, Overhead, Buyout, Keyperson, Other
I, P, C = (I) In force, (P) Pending or (C) Contemplated

CHECK HERE ☒ IF NONE

| Insurer | Type of Insurance | Benefit Amount | Beginning Date | Benefit Period Accident Sickness | I, P, C or Date of Eligibility | Check if Offset by Soc. Sec. | Indicate % of premium paid by Employer (0-100%) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

B 1. Is additional contributory group DI coverage available through the Insured's employer? ☐ Yes ☒ No
2. Does the Insured have plans to participate in the future? ☐ Yes ☒ No
If yes, give details in Remarks

C. Answer this question (12C) if the Insured is a last year medical resident/fellow. If the Insured is covered by a group disability plan, does the Insured intend to continue under the plan or to convert to an individual policy? ☐ Yes ☒ No

D. Will the insurance applied for replace insurance with Northwestern Mutual Life? ☐ Yes ☒ No
If yes, complete the Conditional Surrender form #17-0789. The agent should submit any required papers.

E. Will the insurance applied for replace insurance from a source other than Northwestern Mutual Life? ☐ Yes ☒ No
If yes, complete the information below. The agent should submit any required papers.

When issuing insurance as a result of this application, Northwestern Mutual Life will rely on the fact that the coverage listed below can and will be terminated by the next premium due date, which must be within 90 days of the date of this application. If the coverage listed is not terminated by that date, or it is terminated and later reinstated, any policy issued as a result of this application may be rescinded and all premiums will be returned. Northwestern Mutual Life may contact a listed insurer to confirm that the coverage has been terminated.

| Insurance Company | Type of Insurance | Group or Association Name | Policy Number | Amount to be Replaced | Next Premium Due Date Month | Day | Year |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## DISABILITY OVERHEAD EXPENSE POLICY – IF APPLYING

**13** A. Using the Insured's percentage of ownership in the business, insert the Insured's share of the typical monthly tax deductible business expenses as reported on IRS forms and supporting schedules. (For principal on business loans, give the current monthly installment payment.)

Rent $ ______
Heat $ ______
Telephone $ ______
Electricity $ ______
Professional dues and license fees $ ______
Maintenance $ ______
Real estate taxes $ ______
Other taxes *(Itemize)* $ ______
Interest on business loans $ ______
Depreciation or principal on business loans *(Enter the larger of monthly depreciation expense or monthly principal on business loans)* $ ______
Insurance premiums $ ______
Legal and professional fees $ ______
Employees' salaries *(Professional DOE only) Do not include salaries of employees in the same occupation as the Insured* $ ______
Other normal expenses *(Describe and itemize)* $ ______
TOTAL $ ______

B. How many people are employed by this firm? (Include the Insured in the total.)
Owners: Full-time______ Part-time______ Non-owners: Full-time______ Part-time______

C. How many of the employees are in the same occupation as the Insured? (Include the Insured in the total.)
Owners: Full-time______ Part-time______ Non-owners: Full-time______ Part-time______

## PERSONAL HISTORY QUESTIONNAIRE

**14** A. Has the Insured ever had life, disability, health or long-term care insurance declined, rated, modified, issued with an exclusion rider, cancelled, rescinded, or not renewed? If yes, explain in Remarks ☐ Yes ☒ No

B. When was the Insured's last examination or application for life, disability, or accidental death insurance?
Month 6 Year 99 Company NML or ☐ None

C. Insured's Marital Status: ☒ Single, Widowed or Divorced ☐ Married

D. Insured is a citizen of: ☒ U.S.A. ☐ Other
If other, complete in all cases.
1. Type of Visa ______ Visa Number ______
2. How many years has the Insured resided in the U.S.A. immediately prior to completing this application? 28 years
3. The Insured has read the following statement and agrees to its terms: ☒ Yes ☐ No
*"I intend to reside in the U.S.A. permanently and do not intend to travel to any location outside the U.S.A. for more than 90 days each year. If I am disabled while outside the U.S.A., I will return to the U.S.A."*

E. Does the Insured regularly travel outside the U.S.A. or have plans to leave the U.S.A. for travel or residence? ☐ Yes ☒ No
If yes, explain in the chart below.

| Destination (List all Cities and Countries) | Number of Trips: Last 12 Months | Number of Trips: Next 12 Months | Duration of Each Trip (No. of Days) | Departure Date (Month/Year) | Purpose of Trip |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

F. Is the Insured a member of, or does the Insured plan on joining any branch of, the Armed Forces or reserve military unit? If yes, complete the Military Section ☐ Yes ☒ No

G. Except as a passenger on a regularly scheduled flight, has the Insured flown within the past 2 years, or does the Insured have plans to fly in the future? If yes, complete the Aviation Section ☐ Yes ☒ No

H. In the past 2 years, has the Insured participated in or does the Insured have plans to participate in racing (automobile, snowmobile, motorcycle, boat or go-cart), underwater or sky diving, hang gliding, bungee jumping, mountain or rock climbing, rodeos, boxing, wrestling, or karate? If yes, complete the Avocation Section ☐ Yes ☒ No

I. Has the Insured ever been convicted of violating any criminal law other than a traffic violation? If yes, provide full details in Remarks. Include dates, city and state, reason, charge convicted of, time served, and the date of parole termination ☐ Yes ☒ No

J. In the past ten years, has the Insured had a professional or occupational license or certification that was suspended or revoked or been the subject of a disciplinary proceeding, investigation or inquiry? If yes, provide full details in Remarks. Include date, state, license or certification, action and result ☐ Yes ☒ No

K. 1. What is the Insured's automobile driver's license number? # [redacted] State FL
or, ☐ the Insured does not have a driver's license.
2. In the past 5 years, has the Insured been in a motor vehicle accident, has the Insured been charged with a moving violation of any motor vehicle law, or has the Insured's driver's license been restricted, suspended or revoked? If yes, complete the chart below ☐ Yes ☒ No

| Date | Type and Details (Speeding, Reckless Driving, Driving While Intoxicated, Etc.) | Action (Citation, Fine, Etc.) | Accident (Yes or No) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

## ADDITIONAL REMARKS – PERSONAL HISTORY

FL028238

Walid Bu[illegible]sh
INSURED (First, Middle Initial, Last)

POLICY NUMBER

**15** The Insured consents to this application and declares that the answers and statements made on this application are correctly recorded, complete and true to the best of the Insured's knowledge and belief. Answers and statements brought to the attention of the agent, medical examiner, or paramedical examiner are not considered information brought to the attention of the Company unless stated in the application. Statements in this application are representations and not warranties.

It is agreed that:

(1) If the premium is not paid when the application is signed, no insurance will be in effect. The insurance will take effect at the time the policy is delivered and the premium is paid if the answers and statements in the application are still true to the best of the Insured's knowledge and belief.

(2) If the premium is paid when the application is taken, no insurance will be in effect except as provided in the Conditional Disability Insurance Agreement with the same number as this application.

(3) Receipt of an outline of coverage for the policy applied for is acknowledged.

(4) No agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements.

***INSURED'S AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION***

**16** I authorize Northwestern Mutual Life, its agents, employees, reinsurers, insurance support organizations and their representatives to obtain information about me to evaluate this application and to verify information in this application. This information will include: (a) age; (b) medical history, condition and care; (c) physical and mental health; (d) occupation; (e) income and financial history; (f) foreign travel; (g) avocations; (h) driving record; (i) other personal characteristics; and (j) other insurance. This authorization extends to information on the use of alcohol, drugs and tobacco, the diagnosis or treatment of HIV (AIDS virus) infection and sexually transmitted diseases, and the diagnosis and treatment of mental illness. During the time this authorization is valid it extends to information required to determine eligibility for benefits under any policy issued as a result of this application.

I authorize any person, including any physician, health care professional, hospital, clinic, medical facility, government agency including the Veterans and Social Security Administrations, the MIB, Inc., employer, business associates, consumer reporting agency, banker, accountant, tax preparer, or other insurance company, to release information about me to Northwestern Mutual Life or its representatives on receipt of this Authorization. Northwestern Mutual Life or its representatives may release this information about me to translators, to reinsurers, to the MIB, Inc., or to another insurance company to whom I have applied or to whom a claim has been made. No other release may be made except as allowed by law or as I further authorize.

I have received a copy of the Medical Information Bureau and Fair Credit Reporting Act notices. I authorize Northwestern Mutual Life to obtain an investigative consumer report on me.

☐ I request to be interviewed if an investigative consumer report is done.

This authorization is valid for 30 months from the date it is signed. A copy of this authorization is as valid as the original and will be provided on request.

**The Owner of the policy applied for herein certifies, under penalties of perjury, (1) that the Taxpayer Identification Number given for the Owner on the first page of this application is the Owner's correct Taxpayer Identification Number (or the Owner is waiting for a number to be issued) and (2) the Owner is not subject to backup withholding either because the Owner has not been notified by the Internal Revenue Service (IRS) that the Owner is subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified the Owner that the Owner is no longer subject to backup withholding, and (3) that the Owner is a U.S. person (includes U.S. citizen, resident alien, and others as defined by the IRS). (See Taxpayer Identification Number instructions.)**

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

**The signatures below apply to the authorization, the application and the certification of Taxpayer Identification Number.**

Signature of INSURED (if other than Applicant)

[signature] Signature of APPLICANT

Signed by APPLICANT at Miami Dade Fl.
CITY COUNTY STATE

Signature of OWNER (if other than Applicant or Insured)

Date signed by APPLICANT 11 / 4 / 03
MONTH DAY YEAR

[signature] Signature of LICENSED AGENT

Jordan A. Linn
AGENT'S NAME (Please print)

A1562206
Agent's Florida License Identification Number

**Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.**

90-1 D I (0201) FLORIDA

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

INSURED'S NAME DAVID A. BURSTYN

# MEDICAL QUESTIONNAIRE

☐ MEDICAL EXAM
☐ EXECUTIVE PHYSICAL

CHECK PURPOSE: New Insurance, ☐ Change, ☐ Add Benefit, ☐ Life, EP, VA, ☐ Payor Benefit, ☐ Reconsideration, ☐ DI, ☐ Reinstatement

**Each question must be individually asked and answered. Give details of "Yes" answers below:**

YES NO

31. Have you used tobacco or nicotine in any form in the last 10 years? [redacted]
If "yes", indicate type and date last used:
[redacted] Cigarette, pipe, snuff, chewing tobacco, nicotine gum, nicotine patch or other form of nicotine .................. Date last used [redacted]
Cigar .................................. Date last used [redacted]
Frequency of cigar use .................... [redacted]

For all "Yes" responses
- Identify question numbers
- State signs, symptoms and diagnosis of each illness or injury.
- List the details and results of any treatment
- For each health care provider consulted, list the name, full address, telephone number and dates

[redacted]

YES NO

32. Are you taking medication or drugs (legal or illegal, prescription or nonprescription) for any reason? If yes, list and explain. [redacted]

YES NO

33. In the last 10 years, have you had, been told you had or been treated for: [redacted]
a. Disorder of eyes (including double vision), ears, nose, mouth, throat or speech?
b. Dizziness, loss of balance, headaches, seizures or convulsions, muscle weakness, tremor, paralysis, stroke, memory loss, or any disease of the brain or nervous system?
c. Anxiety, depression, stress, or any psychological or emotional condition or disorder?
d. Persistent shortness of breath, hoarseness, cough, coughing up blood, asthma, emphysema, tuberculosis, or any lung or respiratory disorder?
e. Jaundice, hepatitis, intestinal bleeding, ulcer, hernia, colitis, diverticulitis, recurrent indigestion, or any disorder of the stomach, intestines, liver, gall bladder or pancreas?
f. High blood pressure, chest pain, chest discomfort, chest tightness, irregular heart beat, heart murmur, heart attack or any disorder of the heart or blood vessels?
g. Sugar, albumin, blood or pus in the urine, sexually transmitted or venereal disease, or any disorder of the kidney, bladder, prostate or reproductive organs?
h. Diabetes, thyroid or any glandular (endocrine) disorder?
i. Cancer, tumor, polyp, or disorder of the lymph gland(s) or breast(s)?
j. Anemia, bleeding tendency, or any disorder of the blood?
k. Arthritis, sciatica, gout, or any disorder of the muscles, bones, joints, spine, back or neck?
l. Chronic or unexplained fatigue, fever, or illness?
m. Any allergies?
n. Any disorders of the skin?
o. Deformity, lameness or amputation?

YES NO

34. a. Have you sought or received counseling or treatment for the use of alcohol or drugs or had any symptoms of alcohol abuse or drug addiction? [redacted]
b. In the last 10 years, have you used marijuana, cocaine, heroin, amphetamines or hallucinogens?
c. In the last 10 years, have you used any tranquilizers, sedatives or narcotic drugs?
d. In the last 10 years, have you used legally prescribed drugs in excess of dosages prescribed by a physician or medical practitioner?

35. Are you pregnant? If yes, due date: N/A MALE [redacted]